FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 2 7 2014

DAVID J. MALAND, CLERK
BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:14-CR-47 |
| | § | mHs/JDL |
| THOMAS GIDDENS (01) | § | |
| WANDA HOLLIS (02) | § | |
| CATHERINE NIX (03) | § | |

SEALED

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Background

At all times material and relevant to this Indictment:

1.     The United States Food and Drug Administration ("FDA") was an agency of
the United States government responsible for protecting the health and safety of the
American public by, among other things, ensuring that drugs intended for use by humans
bear true and accurate information and are safe and effective for their intended uses.

2.     Customs and Border Protection ("CBP") was an agency of the United States
government responsible for regulating and facilitating international trade, collecting
import duties, and enforcing United States regulations relating to trade, customs, and
immigration.

### The Food, Drug, and Cosmetic Act

3.     The Federal Food, Drug, and Cosmetic Act ("FDCA"), found at Title 21,
United States Code, Section 301, et seq., ensured that drugs sold for human use were safe

and effective for their intended uses, and that the labeling of such drugs contained true and accurate information.

## *Definitions*

4.      The FDCA defined "interstate commerce" as commerce between any State and any place outside of those boundaries.   21 U.S.C. § 321(b).

5.      Under the FDCA, a "drug" was defined as any article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man; articles (other than food) intended to affect the structure or any function of the body of man" as well as articles intended for use as components of drugs.   21 U.S.C. § 321(g)(1)(B), (C), and (D).

6.      Under the FDCA, the term "label" meant a display of written, printed, or graphic matter upon the immediate container of any article.   21 U.S.C. § 321(k).   The term "labeling" meant all labels and other written, printed, or graphic matter upon any article or any of its containers or wrappers, or accompanying such article.   21 U.S.C. § 321(m).

7.      The FDCA defined a "dietary supplement" as "a product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients:   (A) a vitamin; (B) a mineral; (C) an herb or other botanical; (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; or (F) a concentrate, metabolite, constituent, extract, or combination of any ingredient described in clause (A), (B), (C), (D), or (E)."   21 U.S.C. § 321(ff).

8.      A "prescription drug" under the FDCA was a drug that: (i) because of its toxicity and other potential for harmful effects, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or (ii) was limited by an application approved by FDA, to use under the professional supervision of a practitioner licensed by law to administer such drug.   21 U.S.C. § 353(b)(1).

*Misbranding*

9.      A drug was misbranded if its labeling was false or misleading in any particular.   21 U.S.C. § 352(a).

10.      A drug was also misbranded if its labeling did not bear adequate directions for use.   21 U.S.C. § 352(f)(1).   "Adequate directions for use" meant directions under which a layman can use a drug safely and for the purposes for which it was intended.   21 C.F.R. § 201.5.   By definition, prescription drugs could not have directions that allowed a layman to use them safely and for the purposes for which they were intended.

11.      Under the FDCA, the act of dispensing a prescription drug without a valid prescription from a practitioner licensed by law to administer such a drug was an act that resulted in the drug being misbranded while held for sale.   21 U.S.C. § 353(b)(1).

12.      A drug was also misbranded if it was an imitation of another drug.   21 U.S.C. § 352(i)(2).

_____

*Prohibited Acts*

13.    The FDCA prohibited doing or causing the following: introducing, or delivering for introduction, into interstate commerce any drug that was misbranded. 21 U.S.C. § 331(a).

## Prescription Drugs and Other Substances

14.    Alprazolam was a Schedule IV controlled substance, as defined in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* It was the active ingredient in Xanax®, an FDA-approved prescription drug that was indicated to treat, among other things, panic disorders, anxiety disorders, and nausea due to chemotherapy. Several companies manufactured and distributed FDA-approved generic versions of Xanax®. Sandoz Pharmaceuticals manufactured and distributed an FDA-approved generic drug with alprazolam as its active ingredient. That FDA-approved generic included white tablets imprinted with "GG."

15.    Chlorpheniramine was a drug commonly marketed in the form of chlorpheniramine maleate. Chlorpheniramine maleate was the active ingredient in several FDA-approved antihistamines sold both over-the-counter and in prescription drugs, used in the treatment of symptoms related to colds, flu, and allergies.

16.    Diazepam was a Schedule IV controlled substance. It was the active ingredient in Valium®, an FDA-approved prescription drug indicated to treat, among other conditions, anxiety disorders, the short-term relief of the symptoms of anxiety, acute alcohol withdrawal, skeletal muscle spasm caused by local pathologies such as

inflammation, and convulsive disorders. Several companies produced and marketed diazepam, including generic versions.

17. Melatonin was a naturally occurring hormone produced by the pineal gland of the human brain, as well as in other animals and some plants. Melatonin was often marketed as a dietary ingredient in dietary supplements that were intended to aid sleep.

18. Phenolphthalein was a stimulant laxative active ingredient in certain over-the-counter laxative drug products before it was removed by the FDA from over-the-counter products in 1999 because phenolphthalein was not safe and not of sufficient medical value to outweigh the potential risks associated with its over-the-counter use.

19. Phentermine was a Schedule IV controlled substance. Phentermine was the active ingredient in an FDA-approved generic prescription drug manufactured by Qualitest Pharmaceuticals that was intended as an appetite suppressant for the short-term treatment of obesity. The Qualitest Pharmaceuticals FDA-approved generic drug containing phentermine was a white tablet imprinted with "A 159."

20. Sibutramine was a Schedule IV controlled substance. It was the active ingredient in Meridia®, a prescription drug that was manufactured by Abbott Laboratories and approved by the FDA to treat obesity. In October 2010, FDA requested Abbott to withdraw Meridia® from the market due to cardiovascular events and strokes. Previously, in November 2009, the FDA publicized its concerns about the increased risk of heart attack, stroke, and death posed by Meridia® and the agency requested that the marketer add a contraindication to Meridia's® label for people with a history of

cardiovascular disease. On December 21, 2010, at the request of the manufacturer, the FDA withdrew its approval of Meridia®. *See* 75 Fed. Reg. 80061 (December 21, 2010).

21.     Pfizer, Inc. ("Pfizer") was the manufacturer of the prescription drug Viagra®, approved by the FDA for the treatment erectile dysfunction in men. Viagra tablets were blue, film-coated, rounded-diamond-shaped tablets containing sildenafil citrate equivalent to 25 mg, 50 mg, or 100 mg of sildenafil. The tablets were debossed with "Pfizer" on one side and either "VGR25," "VGR50," or "VGR100" on the other to indicate the dosage strengths. The active ingredient in Viagra was sildenafil citrate. The FDA had not approved a generic drug containing sildenafil citrate.

22.     Cialis® was a prescription drug manufactured by Lilly ICOS LLC (hereafter, "Lilly"). Cialis®, which was a trademark of Lilly, was approved for treatment of male erectile dysfunction and the signs and symptoms of benign prostatic hyperplasia. Cialis® tablets were almond-shaped, with a yellow-gold coating. On one side of the tablet a "C" was imprinted along with the corresponding amount of active ingredient; thus if the product contains 20mg of active ingredient, the Cialis® tablet would have "C 20" imprinted on one side of the tablet. The active ingredient in Cialis® was tadalafil. The FDA had not approved a generic drug containing tadalafil.

23.     Zolpidem was a Schedule IV controlled substance. It was the active ingredient in several FDA-approved prescription drugs, including Ambien®, which was manufactured by Sanofi-Aventis and was intended to treat insomnia. Zolpidem was also the active ingredient in Stilnox®, which was also manufactured by Sanofi-Aventis as an

oblong white tablet. Stilnox® was not approved for distribution in the United States;
Sanofi-Aventis distributed Stilnox® in markets outside of the United States.

## The Defendants

24.     The defendants were not, in any way, (i) authorized by law, (ii) licensed in
any state, or (iii) competent through any medical education and training to administer
prescription drugs, professionally supervise the use of prescription drugs, dispense
prescription drugs, hold prescription drugs for sale, fill a prescription for drugs, or make an
oral or written prescription for drugs.

## Count 1
## 18 U.S.C. § 371
## Conspiracy

25.     Beginning in or about November 2009, the exact date being unknown to the
Grand Jury, and continuing to on or about January 2010, both dates being approximate and
inclusive, in the Eastern District of Texas and elsewhere, the defendants,

**Thomas Giddens,**
**Wanda Hollis,**
**and**
**Catherine Nix**

knowingly and intentionally conspired and agreed together and with each other, and with
other persons known and unknown to the Grand Jury, to commit the following offenses
against the United States:

    a.      defraud the United States by impeding, impairing, obstructing, and
    defeating the lawful functions of the FDA to (i) regulate the interstate sale and

distribution of drugs in the United States, and (ii) safeguard the health and safety of consumers who purchase drugs in the United States.

b.  introduce, and cause the introduction of, drugs that were misbranded within the meaning of 21 U.S.C. §§ 352(a), 352(f)(1), and 353(b)(1) into interstate commerce, with intent to defraud and mislead, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2) and 18 U.S.C. § 2;

c.  fraudulently and knowingly import merchandise into the United States contrary to law in violation of 18 U.S.C. §§ 2 and 545; and

d.  corruptly persuade and use physical force and the threat of physical force with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, cause and induce witnesses to alter, destroy, mutilate, and conceal objects with the intent to impair the objects' integrity and availability for use in an official proceeding, and to alter, destroy, mutilate, and conceal objects with the intent to impair the objects' integrity and availability for use in an official proceeding in violation of 18 U.S.C. §§ 2 and 1512(a)(2)(C), (b)(2)(B), and (c)(1).

**Manner and Means**

26.  It was part of the conspiracy that in November 2009 and December 2009, the defendants received or attempted to receive at least thirty-two (32) separate shipments of misbranded and counterfeit drugs and prescription drugs from sources in China.

27.  It was further part of the conspiracy that the defendants, lacking any valid authorization and medical training, caused those drugs and prescription drugs to be

imported into the United States with false and misleading labeling and without valid prescriptions.

28. It was further part of the conspiracy that the defendants caused different types of drugs and prescription drugs to be imported into the United States including: alprazolam ("Xanax®"); chlorpheniramine; diazepam ("Valium®"); phenolphthalein; Sibutramine; sildenafil citrate ("Viagra®"); and tadalafil ("Cialis®").

29. It was further part of the conspiracy that the defendants sorted and packaged these drugs and prescription drugs so that they could distribute the drugs and prescription drugs.

30. It was further part of the conspiracy that the defendants caused the importation declaration records for these drugs and prescription drugs to bear false information, and agreed to receive these drugs and prescription drugs that bore false importation declaration information.

31. It was further part of the conspiracy that the defendants used aliases to ship and receive the drugs and prescription drugs in order to conceal their activities.

32. It was further part of the conspiracy that the defendants obtained four (4) post office boxes from the United States Postal Service and provided false information to the United States Postal Service to establish one of the post office boxes in order to receive the shipments of prescription drugs.

33. It was further part of the conspiracy that the defendants were paid by a co-conspirator in China via Western Union payments that came from China to the Eastern District of Texas.

34.    It was further part of the conspiracy that from on or about November 2009 to December 2009, the defendants received six (6) separate payments via Western Union from sources in China, totaling $10,540.

35.    It was further part of the conspiracy that upon learning they were the targets of a Federal investigation, the defendants instructed co-conspirators and others who were not involved in the conspiracy to destroy the drugs and prescription drugs.

36.    It was further part of the conspiracy to assault a co-conspirator in order to ensure that he would not cooperate with law enforcement officials, and in retaliation for failing to destroy evidence after the defendants' instructed him to do so

### Overt Acts

37.    In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the defendants or conspirators, both indicted and unindicted, committed, among others, the following overt acts in the Eastern District of Texas and elsewhere:

a.    on or about October 16, 2009, the defendant **Catherine Nix** established a post office box in Athens, Texas, in order to receive drug shipments;

b.    on or about November 16, 2009, the defendant **Thomas Giddens** established a post office box in Athens, Texas, in order to receive drug shipments;

c.    on or about November 30, 2009, the defendant **Wanda Hollis**, using the alias "Louise Lindley" established a post office box in Eustace, Texas, in order to receive drug shipments;

d.    on or about November 30, 2009, the defendant **Thomas Giddens** established a post office box in Eustace, Texas, in order to receive drug shipments;

e.     on or about December 11, 2009, the defendant **Catherine Nix**,

instructed a family member S., known to the Grand Jury, to destroy any packages

that were delivered to the family member's home in the name of the defendant,

**Wanda Hollis**;

f.     on or about December 25, 2009, the defendants **Thomas Giddens,**

**Wanda Hollis,** and **Catherine Nix**, assaulted a co-conspirator, K., known to the

Grand Jury;

g.     as additional overt acts, the Grand Jury incorporates by this reference

the allegations set forth in Counts 2 through 27 of this Indictment as though fully set

forth at this point.

38.     This was all in violation of Title 18, United States Code, Section 371.

### Counts 2-8

**21 U.S.C. §§ 331(a), 352(a), 352(f)(1), and 333(a)(2), 18 U.S.C. § 2**
**Causing the Introduction of Misbranded Drugs into Interstate Commerce**
**with the Intent to Defraud or Mislead**
**(False and Misleading Labeling and Failing to Bear Adequate Directions for Use)**

39.     The factual allegations in paragraphs 1-38 are incorporated by reference

herein.

40.     On or about the dates identified below, in the Eastern District of Texas and elsewhere, the defendants,

**Thomas Giddens,**
**Wanda Hollis,**
**and**
**Catherine Nix**

with the intent to defraud and mislead, introduced and delivered, and caused the introduction and delivery, into interstate commerce, drugs as described below that were misbranded because the labeling was false and misleading under 21 U.S.C. § 352(a), and because they lacked adequate directions for use under 21 U.S.C. § 352(f)(1):

| Count | Description | Date | Purported Drug Brand Name/ Active Ingredient | Actual Ingredient Present |
|-------|-------------|------|---------------------------------------------|---------------------------|
| 2 | White tablets imprinted with "Xanax 2.0" declared as "Gift $50" | December 9, 2009 | Xanax® / Alprazolam | Alprazolam (36% potent as tested) |
| 3 | White and blue speckled tablets imprinted with "A-159" declared as "Gift $50" | December 9, 2009 | Qualitest generic version of phentermine, "A159" / Phentermine | Phenolphthalein and Sibutramine |
| 4 | Yellow, almond-shaped tablets imprinted with "C 20" declared as "Gift $10" | December 9, 2009 | Cialis® / Tadalafil | Sildenafil and Tadalafil (69% potent as tested) |

| 5 | Blue, diamond-shaped tablets imprinted with "Pfizer" and "VGR 100" declared as "Gift $10" | December 9, 2009 | Viagra® / Sildenafil Citrate | Sildenafil (60% potent as tested) |
|---|---|---|---|---|
| 6 | White rectangular tablets imprinted with "GG 249" declared as "Gift $100" | December 30, 2009 | Sandoz generic "GG249" / Alprazolam | Chlorpheniramine, Diazepam |
| 7 | Light blue, round tablets imprinted with "Roche 10" declared as "Gift $50" | December 30, 2009 | Valium® / Diazepam | Melatonin |
| 8 | White, oblong tablets imprinted with "Stilnox" declared as "Gift $100" | December 30, 2009 | Stilnox® / Zolpidem | Melatonin |

41.  This was all in violation of 21 U.S.C. §§ 331(a), and 333(a)(2) and 18 U.S.C. § 2.

## Counts 9-13

**21 U.S.C. §§ 331(a), 352(i)(2), and 333(a)(1), 18 U.S.C. § 2**
**Causing the Introduction of Misbranded Drugs into Interstate Commerce**
**(Imitation Drugs)**

42.  The factual allegations in paragraphs 1-41 are incorporated by reference herein.

43.    On or about the dates identified below, in the Eastern District of Texas and elsewhere, the defendants,

**Thomas Giddens,**
**Wanda Hollis,**
**and**
**Catherine Nix**

introduced and delivered, and caused the introduction and delivery, into interstate commerce, drugs as described below that were misbranded because they were imitation of other drugs and prescription drugs under 21 U.S.C. § 352(i)(2):

| Count | Description of Imitation Drugs | Date | Purported Drug Brand Name / Active Ingredient of Imitation Drug | Actual Active Ingredient or Dietary Ingredient Present in Imitation |
|---|---|---|---|---|
| 9 | White tablets imprinted with "Xanax 2.0" | December 9, 2009 | Xanax® / Alprazolam | Alprazolam (36% potent as tested) |
| 10 | Yellow, almond-shaped tablets imprinted with "C 20" | December 9, 2009 | Cialis® / Tadalafil | Sildenafil and Tadalafil (69% potent as tested) |
| 11 | Blue, diamond-shaped tablets imprinted with "Pfizer" and "VGR 100" | December 9, 2009 | Viagra® / Sildenafil Citrate | Sildenafil (60% potent as tested) |
| 12 | Light blue, round tablets imprinted with "Roche 10" | December 30, 2009 | Valium® / Diazepam | Melatonin |
| 13 | White, oblong tablets imprinted with "Stilnox®" | December 30, 2009 | Stilnox® / Zolpidem | Melatonin |

44.     This was all in violation of 21 U.S.C. §§ 331(a), 352(i)(2), and 333(a)(1), and 18 U.S.C. § 2.

### Counts 14-20
### 18 U.S.C. §§ 545, 2
### Smuggling

45.     The factual allegations in paragraphs 1-44 are incorporated by reference herein.

46.     On or about the dates identified below, in the Eastern District of Texas and elsewhere, the defendants,

**Thomas Giddens,**
**Wanda Hollis,**
**and**
**Catherine Nix,**

imported and brought into the United States merchandise contrary to law, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, as described below, in violation of 21 U.S.C. § 331(a), and did aid and abet the same:

| Count | Description | Importation Seizure Date |
|:---:|:---:|:---:|
| **14** | White tablets imprinted with "Xanax 2.0" | December 9, 2009 |
| **15** | White and blue speckled tablets imprinted with "A-159" | December 9, 2009 |
| **16** | Yellow, almond-shaped tablets imprinted with "C 20" | December 9, 2009 |

| 17 | Blue, diamond-shaped tablets imprinted with "Pfizer" and "VGR 100" | December 9, 2009 |
|----|-----------------------------------------------------------------------|------------------|
| 18 | White rectangular tablets imprinted with "GG 249" | December 30, 2009 |
| 19 | Light blue, round tablets imprinted with "Roche 10" | December 30, 2009 |
| 20 | White, oblong tablets imprinted with "Stilnox" | December 30, 2009 |

47.     This was all in violation of 18 U.S.C. §§ 545 and 2.

**Count 21**
**18 U.S.C. § 1512(a)(2)(C)**
**Tampering with a Witness, Victim, or Informant**

48.     The factual allegations in paragraphs 1-47 are incorporated by reference herein.

49.     On or about December 25, 2009, in the Eastern District of Texas, the defendants,

**Thomas Giddens,**
**Wanda Hollis,**
**and**
**Catherine Nix**

used and attempted to use physical force and the threat of physical force against K., a person known to the Grand Jury, by assaulting and beating him in a locked space, and instructing others to do the same, with the intent to hinder and prevent K. from communicating to a law enforcement officer of the United States, a Special Agent from FDA Office of Criminal Investigations, information relating to the commission and

possible commission of Federal offenses, described herein, in violation of 18 U.S.C. §§ 1512(a)(2)(C) and 2.

**Count 22**
**18 U.S.C. § 1512(b)(2)(B)**
**Tampering with a Witness, Victim, or Informant**

50.    The factual allegations in paragraphs 1-49 are incorporated by reference herein.

51.    On or about December 11, 2009, in the Eastern District of Texas, the defendant,

**Catherine Nix**

did knowingly attempt to corruptly persuade S., a person known to the Grand Jury, by instructing S. to destroy packages containing drugs and with the intent to cause and induce S. to alter, destroy, mutilate, and conceal certain objects containing drugs, with the intent to impair the object's integrity and availability for use in an official proceeding, Grand Jury and trial proceedings resulting from FDA's investigation of the drugs described herein, by telling S., in sum and substance, that S. should burn any drugs that S. had in her possession, in violation of 18 U.S.C. § 1512(b)(2)(B).

**Count 23**
**18 U.S.C. § 1512(b)(2)(B)**
**Tampering with a Witness, Victim, or Informant**

52.    The factual allegations in paragraphs 1-51 are incorporated by reference herein.

53.    On or about December 14, 2009, in the Eastern District of Texas, the

defendant,

**Thomas Giddens**

did knowingly attempt to corruptly persuade K., a person known to the Grand Jury, by

instructing K. to destroy packages containing drugs with the intent to cause and induce K.

to alter, destroy, mutilate, and conceal objects containing drugs with the intent to impair the

objects' integrity and availability for use in an official proceeding, Grand Jury and trial

proceedings resulting from FDA's investigation of the drugs described herein, by

instructing K., in sum and substance, that K. should destroy electronic equipment, paper

envelopes, and any drugs that K. possessed, in violation of 18 U.S.C. § 1512(b)(2)(B).

**<u>Count 24</u>**
**18 U.S.C. § 1512(c)(1)**
**Tampering with a Witness, Victim or Informant**

54.    The factual allegations in paragraphs 1-53 are incorporated by reference

herein.

55.    On or about December 14, 2009, in the Eastern District of Texas, the

defendant,

**Thomas Giddens**

did corruptly alter, destroy, mutilate, and conceal records, documents, and other objects,

and attempted to do so, with the intent to impair the objects' integrity and availability for

use in an official proceeding, Grand Jury and trial proceedings resulting from FDA's

investigation of the drugs described herein, by destroying electronic equipment and paper

envelopes, in violation of 18, U.S.C. § 1512(c)(1).

## Forfeiture Allegation
## Smuggling Counts

56.     The allegations contained in Counts 1-24 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18 U.S.C. §§ 982(a)(2)(B) and 545 and 28 U.S.C. § 2461(c).

57.     Upon conviction of one or more of the offenses alleged in Counts 14-20 of this Indictment, the defendants **Thomas Giddens, Wanda Hollis,** and **Catherine Nix,** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the smuggling offense(s), and, pursuant to 18 U.S.C. § 545 and 28 U.S.C. § 2461(c), any merchandise introduced into the United States in violation of 18 U.S.C. § 545, or the value thereof, including but not limited to the sum of money equal to approximately $10,540 in United States currency, representing the total amount of gross proceeds obtained as a result of the offense.

58.     If any of the property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

59.     This is all pursuant to 18 U.S.C. §§ 545 and 982(a)(2)(B) and 28 U.S.C. § 2461(c).

A TRUE BILL

_BV_

GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

ALLEN H. HURST
Assistant United States Attorney
110 N. College, Suite 700
Tyler, Texas   75702
Bar Card No. 10313280

8/27/2014

Date

JOHN W. M. CLAUD
Trial Attorney
United States Department of Justice
Consumer Protection Branch
450 5th St. NW, Room 6400
Wshington, D.C., 20001
D.C. Bar No. 497900

8/27/14

Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 6:14-CR-____ |
| | § | |
| THOMAS GIDDENS (01) | § | |
| WANDA HOLLIS (02) | § | |
| CATHERINE NIX (03) | § | |

## **NOTICE OF PENALTY**

### **Count 1**

Violation:            18 U.S.C. § 371 (Conspiracy).

Penalty:             A fine of not more than $250,000;
imprisonment for not more than five (5) years;
a term of supervised release of not more than
three (3) years.

Special Assessment:  $100.00

### **Counts 2-8**

Violation:            21 U.S.C. §§ 331(a), 352(a), 352(f)(1), and
333(a)(2), 18 U.S.C. § 2 Causing the
Introduction of Misbranded Drugs into
Interstate Commerce with the Intent to
Defraud or Mislead (False and Misleading
Labeling and Failing to Bear Adequate
Directions for Use)

Penalty:             A fine of not more than $250,000;
imprisonment for not more than three (3)
years; a term of supervised release of not more
than one (1) years.

Special Assessment:  $100.00

## Counts 9-13

Violation: 21 U.S.C. §§ 331(a), 352(i)(2), and 333(a)(1), 18 U.S.C. § 2 Causing the Introduction of Misbranded Drugs into Interstate Commerce (Imitation Drugs)

Penalty: A fine of not more than $100,000; imprisonment for not more than one (1) year; a term of supervised release of not more than five (5) years.

Special Assessment: $100.00

## Counts 14-20

Violation: 18 U.S.C. §§ 545, 2 Smuggling

Penalty: A fine of not more than $250,000; imprisonment for not more than twenty (20) years; a term of supervised release of not more than three (3) years.

Special Assessment: $100.00

Forfeiture Allegation I

## Count 21

Violation: 18 U.S.C. §§ 1512(a)(2)(C) Tampering with a Witness, Victim, or Informant

Penalty: A fine of not more than $250,000; imprisonment for not more than thirty (30) years; a term of supervised release of not more than three (3) years.

Special Assessment: $100.00

## **Counts 22-24**

Violation:              18 U.S.C. §§ 1512(b)(2)(B) and (c)(1)
                        Tampering with a Witness, Victim, or
                        Informant

Penalty:                A fine of not more than $250,000;
                        imprisonment for not more than twenty (20)
                        years; a term of supervised release of not more
                        than three (3) years.

Special Assessment:     $100.00